# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COREY BYRNE,** *et al.* : | |
| : | **CIVIL ACTION** |
| v. : | **No. 25-0586** |
| : | |
| **TEREX USA, LLC d/b/a MARCO,** *et al.* : | |

**McHUGH, J.**                                                                                                   **October 28, 2025**

## MEMORANDUM

This is a product liability case removed from state court brought by a worker who suffered serious injury from a piece of machinery. The case was originally filed in Philadelphia County, and Defendants[1] now seek its transfer to the Middle District of Pennsylvania, arguing it is a more convenient forum. During the seven months this action was pending before the transfer motion was filed, this Court resolved a partial motion to dismiss, held a Rule 16 conference, issued a case management order, and substantially completed analysis of a second partial motion to dismiss. Under the controlling Third Circuit test, the relevant private interests weigh slightly in favor of transfer, but the public interests weigh more substantially against. The motion will therefore be denied.

**I.      Legal Standard**

District courts may transfer a case to another district where venue is proper "for the convenience of parties and witnesses or in the interests of justice." 28 U.S.C. § 1404(a).[2] Although

---

[1] For the purposes of this Motion, "Defendants" excludes Francine and Robert Wulfers, who do not join given their pending motion to dismiss for lack of jurisdiction, ECF 42. *See* Transfer Mot., ECF 61 at 1 n.1.

[2] The parties do not dispute that the Middle District of Pennsylvania would be a proper venue, so I will not address that threshold question. *See Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (explaining that "[t]he threshold question in evaluating transfer is whether this suit could have been brought originally" in the transferee venue); *e.g., Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 74 (E.D. Pa. 2024) ("Since the parties do not dispute that this action could have been brought in the District of Delaware,

courts have broad discretion to decide transfer motions, "[t]ransfer is not to be liberally granted . . . unless the balance of convenience of the parties is strongly in favor of defendant." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (cleaned up).  Defendants seeking transfer typically face an uphill climb since "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Id.* at 25 (citation omitted); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) ("The burden of establishing the need for transfer still rests with the movant.").

*Jumara* establishes the general test for diversity cases. The private interest factors to be considered include: (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—"but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," (6) the location of books and records, and (7) "practical problems that make trial of a case easy, expeditious, and inexpensive." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)[3]; *see Jumara*, 55 F.3d at 879.

---

the Court must analyze twelve public and private factors to determine which forum is most appropriate to consider this case.").

[3] In *Howmedica*, the Third Circuit explained that to the extent *Jumara* recognized "practical considerations that could make the trial easy, expeditious, or inexpensive" as a public interest, it did so with judicial economy in mind.  867 F.3d at 402 n.7.  The *Howmedica* court made clear, however, that "practical problems that make trial of a case easy, expeditious, and inexpensive" also represent a private interest. Consequently, this factor is relevant in considering both prongs, with the focus on judicial economy as a distinct public interest.  *Id.* at 402 n.7; *see Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 537 n.4 (E.D. Pa. 2021) (noting *Howmedica* clarified that "practical considerations" should also be considered in the evaluation of the private interests).

2

The public interest factors include: (1) the judgment's enforceability, (2) the relative administrative difficulty in the two fora resulting from court congestion, (3) the local interest in deciding local controversies at home, (4) the public policies of the fora, (5) the trial judge's familiarity with the applicable state law in diversity cases, *Jumara*, 55 F.3d at 879-80, and (6) judicial economy, *Howmedica*, 867 F.3d at 402 n.7. Although courts should consider these enumerated factors, the Third Circuit made clear that these are not exclusive, so courts may also "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," *Jumara*, 55 F.3d at 879 (quoting 15 *Wright & Miller's Federal Practice & Procedure* § 3847 (2d ed. 1986)); *see also Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 621 (E.D. Pa. 2018) (McHugh, J.) (noting that "rote application of the *Jumara* factors might not encompass all of the relevant considerations.").[4]

## II.   Discussion

### A.   Private Interests

#### 1.   *Plaintiff's Choice of Forum*

Although a plaintiff's initial choice of forum is a paramount consideration in evaluating a transfer motion, *Shutte*, 431 F.2d at 25, I agree with those courts that have held that where it is not the plaintiff's home forum, it is entitled to less weight. *See, e.g.*, *Aamco Transmission Inc. v. Johnson*, 641 F. Supp. 2d 464, 466 (E.D. Pa. 2009). But it does not follow that it is entitled to no weight. Defendants ask me to follow *Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605, 611 (E.D. Pa. 2018), and require Plaintiffs to establish "a persuasive rationale" for choosing to file in

---

[4] Ironically, there was a forum selection clause in *Jumara* that played an important role in the court's analysis, but it is not mentioned among the factors.

3

Philadelphia. I can discern no legal authority for such a requirement. Neither state law nor the federal venue statute limit litigants to filing where they reside. Both provide options, and had Plaintiffs sued originally in this Court, venue would indisputably be proper. Imposing a requirement that a plaintiff who has exercised an option allowed by law must then make some additional showing justifying the choice runs counter to the presumption that a plaintiff's choice is entitled to deference. Nor do I attach significance to the fact that Plaintiffs' initial choice was the state court in Philadelphia. That option was eliminated by removal, but it does not follow that their preference at this point is now rendered irrelevant. If a plaintiff's choice is a "paramount" consideration as held by the Court of Appeals has held, removal cannot operate to eliminate consideration of the plaintiff's preference. Here, opposition to the transfer motion makes Plaintiffs' current preference clear.

Plaintiffs filed suit in their home state. This district, which is contiguous to the district in which they reside, is a proper venue. Plaintiffs' place of residence and the site of the accident have significant relevance in considering the remaining factors, but do not suffice to render Plaintiffs' preference meaningless. This factor therefore weighs against transfer.

        2.     *Defendant's Preference*

The second private factor, the defendant's preference, mostly frames the issue "because there would be no motion to transfer *unless* the defendant prefers a different forum. The essential question is whether a combination of other factors is sufficient to overcome the presumption that the plaintiff's preference governs." *Edwards*, 313 F. Supp. 3d at 622. Here, Defendants clearly prefer to litigate in the Middle District rather than the Eastern District. Defendants represent that they do not have any offices, employees, or materials related to the alleged incident in the Eastern District, whereas one defendant, Terex, is identified as having an "office" in the Middle District.

Transfer Mot., ECF 61-1 at 2-3. Notably, however, it is not alleged that the Terex office cited bears any relation to the issues in this case. Nor does Terex identify *where* that office is located, and given the vast expanse of the Middle District, it may well be further from the federal courthouse in Scranton than from Philadelphia. Defendants also emphasize that for Plaintiffs, the Middle District is more convenient, because they can drive from their home to the Scranton federal courthouse in roughly thirty to forty minutes rather than the 2.5 hours to Philadelphia. In making that point, the defense memo tellingly concedes that "[w]hether Defendants litigate in the Eastern District or Middle District—as they're all out-of-state entities—they are equally inconvenienced." *Id.* at 9. On balance, this factor weighs in favor of transfer, but given Defendants' admitted lack of connection to either forum, it carries less weight than Plaintiff's preference.

        3.      *Location of the Claim*

The third private factor, where the claim arose, supports transfer. As noted above, Plaintiffs allege that Mr. Byrne's injuries occurred while he was working in Archbald, Pennsylvania, a borough in Lackawanna County, which houses the federal courthouse in Scranton—in the Middle District. Am. Compl. ¶ 17, ECF 29. The operative facts as to how the accident occurred are obviously centered in the Middle District. But in a product liability case, other issues central to liability are rooted elsewhere—where a product was designed, tested, and manufactured—leading courts to observe that "in many products liability cases . . . the location of the accident will be relatively unimportant for venue purposes." *Trias v. QVC, Inc.,* No. CV 20-813, 2020 WL 2769585, at *3 (E.D. Pa. May 28, 2020) (collecting cases). Here, most of the discovery and witnesses at trial will come from outside of both the competing venues. But because at least some of the facts are rooted in the Middle District, this factor favors transfer, which Plaintiffs concede. Opp. to Transfer Mot., ECF 67 at 6.

5

    4.  *Convenience of the Parties*

  The fourth private factor considers the respective burdens of transfer on the parties as indicated by their relative physical and financial condition, *Jumara*, 55 F.3d at 879, including who can "afford more easily the inconveniences associated with travel" to the transferee forum, *Scanlan v. American Airlines Group, Inc.*, 366 F. Supp. 3d 673, 678 (E.D. Pa. 2019).[5] Here, Defendants concede that any inconvenience to them is equal in both venues. Transfer Mot., ECF 61-1 at 9. And it is self-evident that as major corporations they have greater resources than Plaintiffs. The sole inconvenience to Plaintiffs is travel to the federal courthouse in Philadelphia as compared to Scranton. But that inconvenience would be limited to case-related events requiring their physical presence here, which ordinarily would be limited to trial. And considering Plaintiffs' obvious willingness to accept such minimal inconvenience by virtue of their filing suit here, this factor is most appropriately deemed neutral.

    5.  *Convenience of the Witnesses*

  The fifth private factor is the convenience of witnesses, with the important caveat that it applies only if the witnesses "may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Defendants point out that Plaintiffs' identified witnesses, including the physicians who treated Mr. Byrne, live in the Middle District, and that the Doe defendants' availability is presently unknown. But they do not identify witnesses who would be unavailable at trial if it were held in this District. *See Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 77 (E.D. Pa. 2024) ("Defendant has the burden of identifying witnesses who would be unavailable at trial.") (cleaned up). Considering the scope of trial subpoenas under Federal Rule of Civil Procedure 45, it is

---

[5] To the extent Plaintiffs ask me to consider any burdens on counsel, the Third Circuit expressly rejected this position long ago, therefore it has no relevance here. *See Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered.").

unlikely that they could. Absent such a showing, this factor is neutral. *See Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492, 500 (E.D. Pa. 2022).

### 6. *Location of Books and Records*

The sixth private factor, the location of books and records, is likewise limited to the extent that certain files cannot be reproduced in the alternative forum. *Jumara*, 55 F.3d at 879. Courts within this District have consistently recognized that due to technological advancements over the thirty years since *Jumara*, this factor "has lost much of its significance in modern litigation, where few business entities retain physical archives of records." *Edwards*, 313 F. Supp. 3d at 623; *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) ("[T]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis."). This factor is therefore neutral.

### 7. *Practical Problems*

Turning to the final private factor, "practical problems that make trial of a case easy, expeditious, and inexpensive," *Howmedica*, 867 F.3d at 402 n.7, a court must be "careful to not interpret this factor so as to 'double count' any considerations that [it] made in the context of other factors," *Scanlan*, 366 F. Supp. 3d at 679. Here, Defendants principally argue that a potential jury view of the accident site in Archbald, which lies within Lackawanna County, would be easier if the jurors are from the Middle District. Transfer Mot., ECF 61 at 5. Given that this is a product liability case, it is hard to conceptualize why a jury view would be necessary. Field trips by juries are rarely permitted, because they are expensive and inherently inefficient. And as a rule, courts consider photographs and videos sufficient to convey whatever information juries need. *See Garcia v. Winters*, No. CV 22-0723, 2022 WL 1488559, at *3 (E.D. Pa. May 11, 2022) (explaining that photo or video evidence can eliminate an inefficient, impractical viewing of an accident site);

*see also Lewis v. Lycoming*, 917 F. Supp. 2d 366, 373 (E.D. Pa. 2013) ("The accident site may be shown to the factfinder through pictures and video. There is no reason that any factfinder would need to visit the site itself."). This factor also reads neutral.

*** 

On balance, the private factors weigh slightly in favor of transfer.

**B.      Public Interests**

The public interest factors derive from "the interest of justice" rather than considerations tied to the parties. *Howmedica*, 867 F.3d at 402 (quoting 28 U.S.C. § 1404(a)). Because this Motion involves adjacent districts within the same state, many of the public factors do not move the needle in either direction. *See Jumara*, 55 F.3d at 882 ("The fact that the two fora are adjacent districts of the same state also obscures the interest-of-justice analysis."). Here, although most of the public factors are neutral, I conclude that the relative docket congestion of each district and judicial economy concerns warrant keeping this case here in the Eastern District of Pennsylvania.

   *1.      Judgment's Enforceability*

The first factor, the judgment's enforceability, "is not an issue in light of 28 U.S.C. § 1963."[6] *Edwards*, 313 F. Supp. 3d at 624; *see, e.g.*, *Kershner*, 305 F. Supp. 3d at 611 (stating that a judgment entered in either the Eastern District of Pennsylvania or the Western District of Pennsylvania "is readily enforceable against either party"). This factor is therefore neutral.

   *2.      Docket Congestion*

Neither party addresses docket congestion, but this second public factor weighs against transfer. As of June 30, 2025, the Eastern District has slightly fewer civil filings than the Middle

---

[6] Under federal law, "[a] judgment . . . may be registered . . . in any other district . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963.

8

District – 399 compared to 415 – and a faster median time from filing to disposition – 5.1 months here compared to 8.3 months in the Middle District. And the number of pending cases per judge in the Eastern District is 457, well below the 588 pending cases per judge in the Middle District. *See* U.S. Courts, Federal Court Management Statistics, June 2025, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-june-2025 (last visited Oct. 15, 2025); *see, e.g.*, *Dariz v. Republic Airline Inc.*, 377 F. Supp. 3d 499, 505 (E.D. Pa. 2019) (denying transfer motion where transferee forum had more pending cases per judge and a longer median time from filing to disposition or to trial in civil cases). As to the presiding judicial officer in this case, current Civil Justice Reform Act statistics show no pending matter overdue for resolution, and the case management order issued in this case adopted the schedule proposed by the parties. This factor weighs against transfer.

        3.        *Local Interests, Public Policies of the Fora, Familiarity with State Law*

The third, fourth, and fifth factors—local interests, the forums' public policies, and familiarity with state law, respectively—are likewise neutral. As an initial matter, the *Jumara* court stated that these factors are largely immaterial when the competing fora lie adjacent. *See Jumara*, 55 F.3d at 882-83. As to the third factor, there is no distinctly local interest in this matter's resolution. Lackawanna County is simply the place where the injury occurred. As to public policy, the goal of promoting safety through the law of product liability applies with equal force across Pennsylvania. And the judges in the Middle District are as familiar with Pennsylvania law as the judges of this Court. These factors do not tip the scales in either direction.

        4.        *Judicial Economy*

The final public factor, judicial economy, weighs significantly in favor of keeping this case in the Eastern District of Pennsylvania. *See Howmedica*, 867 F.3d at 402 n.7 (acknowledging

judicial economy is a distinct, cognizable public interest). It is difficult to understand why it took Defendants more than seven months after they removed this case to the Eastern District to file a transfer motion. Since Defendants removed this case on February 3, 2025, the parties have amended pleadings, met and conferred as Rule 26(f) requires, participated in a lengthy Rule 16 conference, and filed two substantive motions. The one motion was resolved, and a decision in the other (ECF 42) was ready but not issued because of the filing of this Motion. *See Garcia*, WL 1488559, at *5 (noting the transfer motion at issue delayed moving the case forward and opining that "[t]ransfer may yet again delay discovery in a case that began over four months ago."). It cannot be said with any confidence that "a transfer will not significantly disrupt the litigation or result in a waste of judicial resources." *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 828-29, 841 (W.D. Pa. 2006) (granting transfer where the case had been on the court's docket for only six weeks before defendants sought transfer and the parties had not formally developed a record); *see also Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 200 (E.D. Pa. 2008) (finding transfer would not "significantly disrupt the litigation or result in a waste of judicial resources" where the case was on the court's docket for four months before defendants sought transfer).[7] This factor strongly weighs against transfer.

---

[7] Unlike this case, the docket in *Coppola* reflects that the court had not held a Rule 16 conference or addressed any substantive motions before the motion to transfer was filed. *See* EDPA 2:07-cv-04023.

### C. Conclusion

The private factors weigh slightly in favor of transfer, but the public interest factors weigh more strongly against. I therefore conclude that, on balance, this action "would more conveniently proceed and the interests of justice be better served" by keeping this case in the Eastern District of Pennsylvania. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
