**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COREY BYRNE,** ***et al.*** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-0586** |
| | : | |
| **TEREX CORP.,** ***et al.*** | : | |

**McHUGH, J.** **October 22, 2026**

**MEMORANDUM**

This is a product liability action arising out of an injury inflicted by a cement hopper. Plaintiffs sued various companies involved in the hopper's production and sale, including a subsequent purchaser of the company that had originally supplied it. That defendant, Terex, now moves for summary judgment on the ground that when it purchased the company that had manufactured the hopper from Continental, [1] the asset purchase agreement expressly excluded any past liabilities arising out of Continental's operation of the business. Alternatively, Terex moves for summary judgment on a crossclaim against Continental demanding indemnification. In response, Continental moves for summary judgment on its own crossclaim against Terex.

Although discovery has not ended, the few facts necessary to construe the controlling agreement are uncontradicted, and the meaning of the contract is an issue if law. Terex's motion for summary judgment will therefore be granted, and the pending crossclaims between Terex and Continental dismissed as moot.

[1] There are several "Continental defendants" per the parties. These include Continental Manufacturing, Continental Real Estate, Continental Equipment Company, Continental Equipment Co., and Continental Constructing. These companies were involved in various aspects of the deal but are represented together. For ease of reference, the Court refers to Continental throughout.

## I. Relevant Facts of Record

The relevant facts are undisputed: the existence of the Asset Purchase Agreement ("APA") between Terex and Continental; the closing date for the transaction; the date of the hopper's manufacture and sale; the date of the accident; and the date this action was filed.

This suit was filed on January 8, 2025, with Plaintiff alleging that on August 29, 2023, he was severely injured at his job while using a cement hopper. Am. Compl., ¶ 17, ECF 29. The hopper is part of the Marco Portable Stacker Model 560J Conveyor, and was manufactured by Marco, a company now owned by Terex, but owned by Continental when it was manufactured. The order was placed on January 14, 2022. ECF 104, Ex. B. Marco manufactured the hopper in May of 2022 and shipped it on June 27, 2022. ECF 104, at 2; Ex. D. It was installed at Plaintiff's employer in 2022. *Id*. at 3.

On April 1, 2023, Continental sold Marco to Terex by means of an asset purchase agreement. ECF 104, Ex. E. Given the records above, it is self-evident that Terex did not design, manufacture, sell, or deliver the equipment at issue here. *See also* ECF 104, Ex. F, Decl. of James M. Celentano. Neither party contests the validity of the agreement. The agreement defines the scope of Terex's liability in two ways. Section 1.3 of the Agreement, Assumed Liabilities, provides that "Buyer agrees to assume only those liabilities of the Sellers relating to the Business as set forth below," and then describes those liabilities. ECF 104, Ex. E. That section interrelates to Section 1.4, Excluded Liabilities, which explicitly excludes several types of liability from the deal. Pertinently, it states:

> Excluded Liabilities: Except to the extent expressly assumed by Buyer pursuant to **Section 1.3**, Buyer shall not assume or be liable for any liabilities or obligations of Sellers (the "Excluded Liabilities"), including, but not limited to:

> …
>
> (c) all other liabilities and obligations arising out of or relating to Sellers' operation of the Business and the Purchased Assets prior to the Closing, specifically including, but not limited to, any future occurrences of product liability and/or warranty claims related to machinery and equipment manufactured completely and sold by the Business/Business Seller before the Closing Date; provided that Buyer shall provide prompt written notice to Sellers of any such product liability and/or warranty claims.

*Id.* Terex provided notice of the suit to Continental on January 22, 2025. ECF 104, Ex. R. Continental has not contested this and responded in writing, noting that it held at least some potential liability. *Id*. Ex. S. Plaintiff amended his complaint on July 17, 2025, to include the Continental defendants. ECF 29.

## II. Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. Discussion

### A. Terex Did Not Assume the Liability in the Instant Case

#### *1. The Clear and Unambiguous Language of the Contract Excludes Liability for Terex.*

The APA contains a choice of law provision which the parties do not dispute, with the result that Delaware law applies. Delaware's law of contract falls within the mainstream of common law: the language of the contract guides courts in determining the intent of the parties. *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*., 840 A.2d 624, 628 (Del. 2003). Courts "read the agreement as a whole and enforce the plain meaning of clear and unambiguous language." *Thompson Street Capital Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1166 (Del. 2025) (internal citations omitted). Clear and unambiguous language has only one reasonable meaning, and "language from a contract need not be perfectly clear for

an interpretation of it to be deemed as the only reasonable one." *BitGo Holdings, Inc. v. Galaxy Digital Holdings, Ltd.*, 319 A.3d 310, 322 (Del. 2024). "The true test is not what the parties to a contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

The language here clearly excludes "liabilities and obligations arising out of or relating to [Continental's] operation of the Business and the Purchased Assets prior to the Closing." This language is clear and unambiguous. The claim at issue in this case arises out of alleged defects in the seller's product, which was entirely manufactured and sold prior to the closing of the purchase agreement. Therefore, any liability here stems from Continental's operation of the business and is an excluded asset per the terms of the APA.

*2. Continental's counterarguments are unpersuasive.*

Continental responds with an affirmative argument on its crossclaim for indemnification. It argues that the "excluded liabilities are, expressly, 'claims,'" ECF 105, 12, such that it is the date that suit was filed rather than the date of injury that controls. By its reading of the APA, liability lies with Terex, because this case was brought after the transaction closed.

This argument cannot be reconciled with the plain language of the exclusion, which applies to "any future occurrences of product liability and/or warranty claims related to machinery and equipment manufactured completely and sold by the Business/Business Seller before the Closing Date." Plaintiff's suit meets every requirement for the exclusion to apply, as it is a "future . . . product liability . . . claim . . . related to equipment manufactured completely and sold . . . before the Closing Date." Continental's focus on the word "claims" is misplaced. The plain language makes clear that the liabilities are in fact "not limited to" claims. The

language of the exclusion encompasses *any* liability arising out of Continental's activities and then makes a point to say that this includes, but is not limited to, future product liability claims like the one at issue here.

Continental's reading would require the Court to ignore Section 1.3 of the APA, which directly precedes Section 1.4 and is referenced therein. A "court must construe the agreement as a whole," and the "meaning inferred from a particular provision cannot control the meaning of the entire agreement." *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (internal citations omitted). Section 1.3 explicitly describes the "only" liabilities Terex assumed in the purchase, and the itemization did not include claims like those brought by Plaintiffs here. And paragraph (e) of Section 1.3 affirms that Terex was assuming responsibility for its operation of the business "on or after the Closing." ECF 104, Ex. E at 5.

Continental attempts to argue that its liability was entirely contingent because it depended on the filing of a lawsuit. But "a contingent obligation is, nonetheless, an obligation," *In re Allegheny Health Educ. and Research Foundation*, 383 F.3d 169, 178 (3d Cir. 2004), and the APA contemplated that by its reference to future product liability claims.

*3. Plaintiffs fail to identify any material facts in dispute.*

Plaintiffs submitted a one-page response to Terex's motion for summary judgment. Pl. Resp. to Def. Mot. Summ. J., ECF 108. In it, Plaintiffs only state that "given that there is a genuine issue of material fact among the Defendants as to liability pursuant to a contract, Plaintiffs submit that summary judgment is not warranted." *Id*. But the meaning of a contract presents an issue of law for the Court, and Plaintiffs have not identified any material facts in dispute relevant to the contractual issue. "[M]ere formal denials or general allegations which do

not show the facts in detail and with precision are insufficient to prevent the award of summary judgment." *Robin Construction Co. v. United States*, 345 F.2d 610, 613 (3d Cir. 1965).[2]

### B. The Remaining Crossclaims Between Terex and Continental are Moot

Because Terex has no liability for the claims raised by Plaintiffs, the crossclaims for indemnity are rendered moot and will be dismissed.

## IV. Conclusion

For the reasons set forth above, Terex's motion for summary judgment will be granted and Continental's cross motions will be denied. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

[2] Plaintiffs have not waived any claims against the remaining defendants.